No. 70,006

In the Matter of PAUL D. HANDY, *Respondent*.

(867 P.2d 341)

Opinion filed January 21, 1994.

*Dennis Moore,* special examiner for the Commission on Judicial Qualifications, argued the cause, and *Edward G. Collister, Jr.,* examiner, was on the notice of formal proceedings for the petitioner.

*Michael A. Barbara,* of Topeka, argued the cause for the respondent.

*Per Curiam:* This an original proceeding relating to judicial conduct against respondent, Paul D. Handy, District Judge of Finney County. In a formal proceeding before the Commission on Judicial Qualifications, respondent was charged with six counts alleging violations of the Canons of the Code of Judicial Conduct. The Commission found that the allegations contained in Counts I, II, III, and IV, and some of the allegations contained in Count V, were established by clear and convincing evidence and that respondent violated the following Canons under the respective counts charged: **Count I-**Canon 2A (1993 Kan. Ct. R. Annot. 381), Canon 3C(1) (1993 Kan. Ct. R. Annot. 382), and Canon 5C(1) (1993 Kan. Ct. R. Annot. 389) of the Code of Judicial Conduct; **Count II-**Canons 1 (1993 Kan. Ct. R. Annot. 380), 2A, 3C(1)(c), and Canon 5C(1) and (7) of the Code of Judicial Conduct; **Count III-**Canons 1, 2A, 3C(1)(c) and Canon 5C(1) and (7) of the Code of Judicial Conduct; **Count IV-**Canons 1, 2A, and 5C(1) of the Code of Judicial Conduct; and **Count V-**Canons 1 and 2A. The Commission found that one of the allegations contained in Count V and all of the allegations contained in Count VI were not established by clear and convincing evidence.

Based on its finding and conclusions, the Commission recommended that respondent be publicly censured, with five or more members concurring. Two members of the Commission concurred with the majority's findings of fact and conclusions of law but dissented as to the recommendation for public censure. The dissenting members voted for public admonishment by the Commission under Rule 620 (1993 Kan. Ct. R. Annot. 404).

The standard of proof to be applied in this inquiry is that of clear and convincing evidence. *In re Rome*, 218 Kan. 198, Syl. ¶ 9, 542 P.2d 676 (1975). We have examined the transcripts and exhibits and conclude that the Commission's findings and conclusions, except where indicated below, are supported by clear and convincing evidence. We agree with the Commission that one of the allegations in Count V and all of the allegations in Count VI were not established by clear and convincing evidence. We find the remaining allegations in Count V do not support a violation of Canons 1 and 2. Accordingly, we dismiss Counts V and VI.

Our opinion is divided into four sections dealing with each remaining count. We treat each count separately by setting forth the charge before the Commission, the findings and conclusions of the Commission, the exceptions taken by respondent, and our discussion and resolution of the charged misconduct.

## I.

A. The Charge

### "COUNT I

"It is alleged that Respondent, the Hon. Paul D. Handy, who was at the time a Judge of the District Court of the 25th Judicial District, did engage in certain conduct which violates the provisions of Canon 2[A] of the Rules of the Supreme Court Relating to Judicial Conduct which provides, *inter alia*:

'A judge should avoid impropriety and the appearance of impropriety in all his activities.'

'A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity . . . of the judiciary.'

and Canon 3C(1) which provides:

'A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . .'

and Canon 5C(1) which provides:

'A judge should regulate his extra-judicial activities to minimize the risk of conflict with his judicial duties.

'C. Financial Activities.

'(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve

him in frequent transactions with lawyers or persons likely to come before the court on which he serves.'

"Respondent did, commencing in the year 1985, accept a contractual commitment, or an appointment, as Municipal Judge of the City of Garden City, Kansas. Between first accepting such position as Municipal Judge of Garden City and the current time, Respondent has presided over the Municipal Court of Garden City, Kansas, is an employee of the City of Garden City, Kansas, and has represented the interests of the City in presiding over said Municipal Court. That concurrently while occupying the position of Municipal Judge of Garden City, Respondent has served as a Judge of the District Court of the State of Kansas, 25th Judicial District. That while serving in such capacity as a state District Court judge, as such a judge Respondent has presided over litigation in which his other employer, Garden City, Kansas, has been a party in adverse proceedings. Respondent therefore makes rulings and issues decisions that directly affect the interests, sometimes monetary interests, of his employer, Garden City. This course of conduct, it is alleged, violates the Canons of Judicial Conduct."

## B. Commission's Findings of Fact

The findings of fact of the Commission on Count I, agreed to by respondent and adopted by this court, are as follows:

"FINDINGS OF FACT
"COUNT I
"(Municipal Judgeship)

"1. Respondent is a District Judge in the Twenty-Fifth Judicial District, Finney County, Kansas. He assumed that position January 18, 1984, and retains that position at present.

"2. Commencing July 1, 1986, Respondent was also appointed and served concurrently as Municipal Court Judge in the city of Garden City.

"3. As Municipal Court Judge, Respondent initially received a salary of $14,417.00 in 1986 and the salary increased to $16,200.00 in 1991.

"4. Either the City Manager or the City Commission of Garden City hired Respondent as Municipal Court Judge and he served at the pleasure of the hiring authority.

"5. As District Court Judge, and as Municipal Judge of Garden City, he presided over contested cases in which the City of Garden City was a party. Respondent assumed that it was well known in the community that he was a Municipal Judge and a District Court Judge. With two other district judges in the judicial district, those cases assigned to Respondent could have been assigned to other judges, but were not. There was no evidence that Respondent disclosed on the record his relationship with the City which would have been a basis for disqualification nor that the parties, pursuant to Canon 3(D) agreed in writing, independent of the Judge's participation, that the Judge's relationship with the City was immaterial.

"6. The cases involving Garden City as a party over which Respondent presided as District Judge included civil cases, forfeiture actions, workers

compensation matters, cases involving police officers and other civil litigation.

"7. Respondent continued to serve concurrently as District Judge of the Twenty-Fifth Judicial District and Municipal Judge of Garden City, Kansas, until September 22, 1992, when the Complaint was filed in these proceedings. Respondent has not presided as Judge in either Court since that date.

"8. There are three District Court Judges in the Twenty-Fifth Judicial District, including Judge Stephen Nyswonger, Judge Philip Vieux and respondent.

"9. A District Judge in the Twenty-Fifth Judicial District is appointed by the governor and has certain constitutional protection, which protection is not available to a Municipal Court Judge.

"10. Prior to the acceptance of the position of Municipal Judge, Respondent personally contacted Supreme Court Justice Harold Herd, who was the Departmental Justice for the Twenty-Fifth Judicial District, and inquired whether acceptance of this position was in conflict with or a violation of any provisions of the Code of Judicial Conduct. Justice Herd conferred with the other Justices of the Kansas Supreme Court, and the Justices unanimously agreed Respondent's acceptance of the position was not a conflict nor any violation of the Code of Judicial Conduct. Respondent then accepted the position of Municipal Judge of Garden City.

"11. At no time during Respondent's, tenure as District Judge did he preside in any contested matter (a) in which the City of Garden City was a party or had any interest in said proceedings from any appeal from the Municipal Court and (b) in which Respondent presided in the Municipal Court."

## C. Commission's Conclusions of Law

The conclusions of law of the Commission on Count I are as follows:

"3. Although the Supreme Court authorized Respondent to serve as a District Court Judge and concurrently as a Judge of the Municipal Court in Garden City, the Commission finds violation of the Canons cited, arising out of the manner in which Respondent conducted himself in these positions. Respondent, as District Judge of Finney County, presided over, heard and decided civil actions in which the City of Garden City was a party. It was not sufficient that Respondent assumed it was well known in the community that he was a Municipal Judge and a District Court Judge. With two other District Judges in the judicial district, those cases assigned to Respondent could have been assigned to the other judges. In the alternative, pursuant to Canon 3(D), Respondent could have disclosed on the record the basis of his disqualification. If the parties and lawyers had agreed in writing, independent of the judge's participation, that the judge's relationship was immaterial, then he could have participated in the proceedings without there being any violation."

D. Exception Taken by Respondent

Respondent takes the following exception:

"4. In Count I, the Kansas Supreme Court imposed no conditions on Respondent. It was common knowledge in the community and the Bar of Finney County of Respondent's dual role. Respondent's motion to dismiss should be sustained as a matter of law."

E. Discussion and Resolution of Charged Misconduct

We note that respondent moved to dismiss Count I. The Commission properly denied respondent's motion. While this court may have authorized respondent to seek the position of municipal judge, it did not thereby approve all conduct that respondent may have engaged in while acting in his official capacity as both municipal judge and judge of the district court. The Canons of Judicial Ethics do impose strict obligations upon a judge. In this case respondent ignored a clear conflict of interest by handling cases before the district court that involved his employer, the City of Garden City, Kansas. Respondent may not abdicate his obligations as a judge by claiming this court authorized him to hear cases involving a clear conflict of interest. His conduct was not approved by this court and violated Canon 2A, Canon 3C(1), and Canon 5C(1). We conclude that respondent violated these canons by the manner in which respondent conducted himself holding the position of Municipal Judge and District Court Judge in Finney County, Kansas.

As District Judge of Finney County, respondent presided over, heard, and decided civil actions in which the City of Garden City was a party. As indicated by the Commission and found by this Court, it was not sufficient that respondent assume it was well known in the community that he was a municipal judge and a district court judge. With two other district judges in the judicial district, those cases assigned to respondent involving conflict should have been assigned to other judges. In the alternative, Canon 3D would have allowed respondent to have disclosed on the record the basis for his disqualification and, if the parties and lawyers had agreed in writing independent of the judge's participation that the judge's relationship was immaterial, then he could have participated in the proceedings without there being any violation.

To avoid any future problem in this area this court recently adopted a rule that prohibits a general jurisdiction district judge from occupying a position as a municipal judge while sitting as a district judge. See Supreme Court Rule 651 (1993 Kan. Ct. R. Annot. 411).

## II

### A. The Charge

#### "COUNT II

"It is alleged that Respondent, the Hon. Paul D. Handy, who was at the time a Judge of the District Court of the 25th Judicial District, did engage in certain conduct which violated the provisions of Canon 1 of the Rules of the Supreme Court Relating to Judicial Conduct which provides, *inter alia*:

'A judge should uphold the integrity . . . of the judiciary.'

'A judge should participate in establishing, maintaining and enforcing and should himself observe high standards of conduct so that the integrity . . . of the judiciary may be preserved.'

and Canon 2[A] which provides:

'A judge should avoid impropriety and the appearance of impropriety in all his activities.'

'A. A judge should . . . conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.'

and Canon 3C(1)(c) which provides:

'Disqualification.

'(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

'(c) he knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy . . . .'

and Canon 5C(1) and (7) which provide:

'A judge should regulate his extra-judicial activities to minimize the risk of conflict with his judicial duties.

'C. Financial Activities.

'(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.'

'(7) Information acquired by a judge in his judicial capacity should not be used or disclosed by him in financial dealings or for any other purpose not related to his judicial duties.'

"The facts constituting the alleged violation of the foregoing Rules include the following:

"On February 27, 1991, a probate case entitled 'In the Matter of the Estate of Laverne Bourne', Case No. 91 P 10, was filed. A major asset of the Estate was real property, a condominium, the address of which was 817 Kensington, Garden City, Kansas.

"On February 28, 1991, Respondent as a Judge of the District Court, signed two Orders in the probate case, 91 P 10, an Order Admitting the Will to Probate and an Order for Hearing.

"On March 13, 1991, a financial institution to which Respondent had applied for a loan to purchase a residence was beginning to assemble the paperwork to consider loaning Respondent money on a purchase money mortagage to purchase 817 Kensington, the same property that was an asset of the probate estate in probate Case No. 91 P 10.

"On March 18, 1991, Respondent signed a contract for the purchase of 817 Kensington with the executor of the Bourne Estate, Bryce Roderick, whose petition to admit the will of Laverne Bourne to probate was the subject of an Order signed February 28, 1991, by Respondent.

"On March 19, 1991, a contract between Respondent and the executor of the Estate was completely executed for Respondent's purchase of 817 Kensington.

"On April 8, 1991, a report of the sale to Respondent was filed in Case No. 91 P 10.

"On April 9, 1991, an Order was signed by another Judge of the same district, Judge Phil Vieux, ordering a hearing on confirmation of the sale to Respondent for April 12, 1991.

"On April 12, 1991, Judge Vieux by court order confirmed the sale of the asset in the Estate, 817 Kensington, to Respondent. The Order was filed April 17, 1991.

"At no time between February 27, 1991, and April 17, 1991, did Respondent ever file any document evidencing his recusal in Case No. 91 P 10, evidencing his disqualification in Case No. 91 P 10, or in any way evidencing his inability or refusal to continue to be a judge of record in Case No. 91 P 10, a case in which he had previously exercised judicial power to enter orders."

## B. Commission's Findings of Fact

The findings of the Commission on Count II, agreed to by respondent and adopted by this court, are:

"COUNT II

"(Property at 817 Kensington Boulevard)

"12. On February 27, 1991, a probate case captioned, *In the Matter of the Estate of LaVerne Bourne, Deceased,* Case No. 91P10, was filed in the

Finney County District Court. The case was assigned by the Clerk of the Court, pursuant to Local Rule, to Judge Donna L. J. Blake, a district magistrate.

"13. An asset in the Estate was real property located at 817 Kensington Boulevard, Garden City, Kansas.

"14. On February 28, 1991, counsel for the Estate, Mr. Ward Lloyd, came to Respondent's chambers and requested the approval of two orders, as Judge Blake was unavailable.

"15. On February 28, 1991, Respondent, as judge of the District Court, signed an 'Order Admitting Will to Probate and Appointing Executor,' and 'Order for Hearing and Notice to Creditors,' and 'Letters Testamentary' naming Bryce Roderick, II, as Executor of the Will of LaVerne Bourne. All of said documents were filed by counsel for the estate with the Clerk of the Court.

"16. On March 15, 1991, Maggie Dale, a realtor with ARC Real Estate of Garden City, contacted Respondent and advised that property at 817 Kensington Boulevard has just been listed on the market for sale by MBA Real Estate Agency. Respondent made arrangements with Mrs. Dale to view the property. Respondent received from Mrs. Dale a real estate multi-list sheet describing the property and identifying the owner as Bryce Roderick, Executor of the Estate of M. LaVerne Roderick (Bourne).

"17. On March 18, 1991, Respondent delivered to Mrs. Dale a written offer to purchase the property. On March 19, 1991, the Executor, Bryce Roderick, II, accepted the Respondent's offer and executed the contract of sale on 817 Kensington Boulevard.

"18. The Respondent testified that at the time he made the offer to purchase the property at 817 Kensington Boulevard, he had no recollection of having signed the orders in Case No. 91P10 nearly three weeks earlier. Respondent further testified he was unaware that LaVerne Bourne was one and the same as M. LaVerne Roderick, and did not become aware of such identity until he had a conversation with counsel for the Estate in April, 1991.

"19. It further appears that Respondent knew Bryce Roderick from his involvement in the community but that he did not know either LaVerne Roderick Bourne or her husband.

"20. On April 5, 1991, Respondent closed on the sale of said property, and on April 8, 1991, a 'Report of Sale and Petition for Confirmation' was filed by counsel for the Estate in Case No. 91P10.

"21. On April 9, 1991, an 'Order for Hearing' was signed by Judge Philip C. Vieux, a district judge, ordering a hearing on confirmation of the sale for April 12, 1991.

"22. On April 12, 1991, Judge Vieux approved an 'Order of Confirmation' which confirmed the sale of the property at 817 Kensington Boulevard to Respondent. The Order was filed by counsel on April 17, 1991.

"23. Respondent did not make any effort to determine if he had had any contact or involvement as District Court Judge with the *Bourne Estate*, 91P10, case before he purchased the condominium from the estate.

"24. At no time between February 28, 1991, and April 17, 1991, did Respondent file any document recusing himself in Case No. 91P10."

## C. Commission's Conclusion of Law

The conclusions of law of the Commission on Count II are as follows:

"4. While there is no evidence that Respondent obtained an unfair advantage in his purchase of a condominium, which was the asset of an estate in which he had signed orders, by reason of his position his actions ·still constitute a violation of Canons 1, 2[A], 3(C)(1)(c) and 5(C)(1) and (7).

"5. The record reveals that the probate case was filed on February 27, 1991; that the next day, Respondent, as Judge of the District Court, signed orders admitting the Will to probate; and that 18 days later, Respondent signed a written offer to purchase the condominium from the estate. The fact that the multi-list sheet identified the owner as an executor of an estate should have prompted an inquiry as to whether this property was involved in pending litgation in a Court in Respondent's judicial district and whether or not he was the judge of record. At the very least, Respondent's actions indicate an insensitivity to the appearance of impropriety regarding such a purchase. While the Commission believes it is the better practice never to purchase property in such circumstances, the Judge should have at least determined if he had any involvement in the litigation or was likely to have future involvement in the litigation by way of appeal from a magistrate's ruling or otherwise."

## D. Exception Taken by Respondent

Respondent takes the following exception:

"5. In Counts II and III, Respondent exercising all reasonable care could not have been aware that the real estate he subsequently purchased was the same property in which he signed routine orders earlier."

## E. Discussion and Resolution of Charged Misconduct

The probate case was filed on February 27, 1991. The very next day respondent, as Judge of the District Court of Finney County, signed orders admitting the will to probate. Eighteen days later, respondent signed a written offer to purchase a condominium from the estate. In its conclusions of law the Commission notes that the multi-list sheet identification of the owner as an executor of the estate should have prompted an inquiry as to whether this property was involved in pending litigation in a court in respondent's judicial district and whether or not he was

a judge of record in that proceeding period. We agree and concur in the conclusions of the Commission that respondent's actions indicated an insensitivity to the appearance of impropriety regarding such a purchase.

We also agree with the Commission's observation that it is a better practice never to purchase property in such circumstances. At the very least, respondent should have determined whether he had any involvement in litigation prior to his purchase of this property. We have no hesitancy in concluding that respondent's activities violated Canons 1, 2A, 3C(1)(c), and 5C(1). We, however, conclude that the provisions of Canon 5C(7) do not apply to the transaction involved under Count II. We therefore conclude that respondent did not violate the provisions of Canon 5C(7) as found by the Commission.

### III

A. The Charge

#### "COUNT III

"It is alleged that Respondent, the Hon. Paul D. Handy, who was at the time a Judge of the District Court of the 25th Judicial District, did engage in certain conduct which violated the provisions of Canon 1 of the Rules of the Supreme Court Relating to Judicial Conduct which provides, *inter alia*:

'A judge should uphold the integrity . . . of the judiciary.'

'A judge should participate in establishing, maintaining and enforcing and should himself observe high standards of conduct so that the integrity . . . of the judiciary may be preserved.'

and Canon 2[A] which provides:

'A judge should avoid impropriety and the appearance of impropriety in all his activities.'

'A. A judge should . . . conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.'

and Canon 3C(1)(c) which provides:

'Disqualification.

'(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

'(c) he knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy . . . .'

and Canon 5C(1) and (7) which provide:

'A judge should regulate his extra-judicial activities to minimize the risk of conflict with his judicial duties.

'C. Financial Activities.

'(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.'

'(7) Information acquired by a judge in his judicial capacity should not be used or disclosed by him in financial dealings or for any other purpose not related to his judicial duties.'

"It is alleged that the following facts indicate violation of the Canon set forth previously.

"On October 10, 1988, in the District Court of Finney County, Kansas, a foreclosure action upon a home was filed by Landmark Federal Savings against Melvin and Sarah Nichols. The case was assigned to Respondent as Judge of the District Court.

"In January, 1989, Mr. Nichols deeded the property to Landmark and the lawsuit continued to be on file.

"On March 20, 1989, while the lawsuit was still pending before him, Respondent signed a contract to puchase the property that was the subject of the foreclosure action. The purchase was subsequently completed.

"On July 7, 1989, Respondent signed a request, as district judge, asking the Clerk of the Court to issue the Clerk's notice of dismissal of inactive cases, one of which was Case No. 88 C 325, the pending foreclosure action involving the house he had purchased. A Notice of Dismissal was subsequently filed."

## B. Commission's Findings of Fact

The findings of fact of the Commission on Count III, agreed to by respondent and adopted by this court, are as follows:

"COUNT III
"(Property at 407 Magnolia Street)

"25. The following facts were admitted pursuant to Stipulation by the parties:

a. On October 10, 1988, a foreclosure action upon real estate at 407 Magnolia Street, Garden City, Kansas, was filed in the District Court of Finney County, in an action styled *Landmark Federal Savings Association, Plaintiff v. Melvin E. Nichols, Sr. and Sarah M. Nichols, Defendants,* Case No. 88C325.

b. The case was originally assigned to Judge Philip C. Vieux and reassigned to the Respondent effective January 1, 1989, when the Respondent was assigned the civil bench.

c. On January 23, 1989, the Defendants, Melvin and Sarah Nichols, deeded the property to the Plaintiff, Landmark Federal Savings Association. This conveyance is reflected in Book 78, Page 381 of the Office of the Register of Deeds in Finney County. No proceeding was ever held in Case No. 88C325, but it remained an active case in the Office of the Clerk of the Court.

d. In early March, 1989, Respondent and his wife had inquired of Mrs. Maggie Dale, a local realtor, concerning the purchase of rental property in Garden City. On March 18, 1989, Mrs. Dale called Respondent and advised of the availability of a house at 407 Magnolia Street, owned by Landmark Federal Savings Association, and for sale 'as is.'

e. On March 20, 1989, Respondent signed a 'Residential Contract for Sale of Real Estate' on the property at 407 Magnolia, Garden City. The contract was accepted by Landmark, and Respondent subsequently closed on the property. A deed dated March 22, 1989, was given by Landmark Federal Savings Association to Paul and Noreene Handy, conveying the property at 407 Magnolia.

f. On July 7, 1989, Respondent, as District Court Judge, executed a 'Request for Clerk's Notice of Intent to Dismiss' on all then pending but inactive cases. One of 69 cases listed for dismissal was Case No. 88C325.

g. On August 2, 1989, Landmark's attorney, David Snapp of Dodge City, caused to be filed with the Clerk's office a 'Notice of Dismissal.'

h. At no time did Respondent file any document recusing himself in Case No. 88C325.

i. At no time did Respondent conduct any hearing in Case No. 88C325.

"26. The Respondent testified that he had no personal knowledge of Case No. 88C325 either at the time he and his wife executed the contract to purchase the property at 407 Magnolia or at the time he executed the 'Request for Clerk's Notice of Intent to Dismiss' on the then pending, but inactive, 69 cases. Respondent further testified his first knowledge of the *Landmark Federal v. Nichols* case was when he received a letter from the Commission's Examiner, Ed Collister, in June, 1992."

## C. Commission's Conclusions of Law

The conclusions of law of the Commission on Count III are as follows:

### "COUNT III

"6. As in Count II, the Commission believes that Respondent's actions show an insensitivity to the appearance of impropriety in these real estate transactions. The fact that the real property was owned by Landmark Federal (a lending institution), which ordinarily would not own real property, should have prompted an inquiry by the Respondent as to whether the subject

property was involved in any litigation in District Court, whether or not he was the judge of record. By Respondent's failure to do so, he has violated Canons 1, 2[A], 3(C)(1)(c) and 5(C)(1) and (7).

"The Commission further notes that, in a document entitled 'Answer to a Matter Not Within Notice of Formal Proceedings,' filed with the Commission on November 17, 1992, Respondent called to the Commission's attention another real estate transaction in which Respondent and his wife purchased property which had previously been the subject of litigation and in which Respondent had signed a journal entry setting aside an order of sale. The Notice of Formal Proceedings was not amended to add this property as a separate count, but Respondent's actions reveal the same insensitivity to the appearance of impropriety exhibited in the real estate transactions described in Counts II and III."

## D. Exception Taken by Respondent

Respondent takes the following exception:

"5. In Counts II and III, Respondent exercising all reasonable care could not have been aware that the real estate he subsequently purchased was the same property in which he signed routine orders earlier."

## E. Discussion and Resolution of Charged Misconduct

The Commission notes in its conclusions that the actions of respondent show an insensitivity to the appearance of impropriety in this real estate transaction under Count III. We agree with these observations. We further concur in the Commission's conclusion that the ownership of the property by a lending institution should have prompted an inquiry by respondent as to whether the subject property was involved in any litigation in the district court, whether or not respondent was a judge of record in any proceeding involving this property.

We conclude that respondent's activities violated Canons 1, 2A, 3C(1)(c), and 5C(1). We, however, conclude that the provisions of Canon 5C(7) do not apply to the transaction involved under Count III. We therefore conclude that respondent did not violate the provisions of Canon 5C(7) as found by the Commission.

### IV

## A. The Charge

### "COUNT IV

"It is alleged that Respondent, the Hon. Paul D. Handy, who was at the time a Judge of the District Court of the 25th Judicial District, did engage in certain conduct which violated the provisions of Canon 1 of the Rules of the Supreme Court Relating to Judicial Conduct which provides, *inter alia*;

'A judge should uphold the integrity . . . of the judiciary."

and Canon 2 which provides

'A judge should avoid impropriety and the appearance of impropriety in all his activities.

'A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity . . . of the judiciary.'

and Canon 5C(1) which provides:

'A judge should refrain from financial and business dealings which tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.'

"The facts which it is alleged constitute violation of these Canons include the following:

"At the same time that Respondent was first presiding over and then purchasing an asset from the Estate of Laverne Bourne, as set out in Count II, Respondent had commenced a business relationship with the owner of another piece of real property, a condominium, located nearby the property he purchased from the Bourne Estate, 817 Kensington.

"After a period of time in which Respondent had inquired of Mr. Joe Hollis, of Garden City, Kansas, whether the latter would sell Respondent a condominium Mr. Hollis owned at 1022 Kensington, Garden City, Kansas, Respondent finally signed a contract to purchase that condominium on November 26, 1990. Respondent believed that the contract was not contingent upon his selling another home that he owned at 1609 Longhorn. Mr. Hollis' contract with Respondent was not dependent upon a financing contingency. At least through the week of March 18, 1991, Respondent believed he and Mr. Hollis had a contract.

"On March 15 and March 16, 1991, Respondent told Mr. Hollis that he might be able to close the purchase of Mr. Hollis' property prior to the pending closing date of March 29, 1991.

"At the time of those comments to Mr. Hollis, Respondent's lendor, Western State Bank, had already begun accumulating documents to accomplish a purchase money mortgage loan to Respondent on 817 Kensington, the Bourne condominium.

"On March 18, 1991, Respondent signed an offer to purchase the Bourne condominium.

"On March 19, 1991, an executed contract between Respondent as buyer and the Estate of Laverne Bourne as seller was in existence.

"On March 19, 1991, Respondent called Mr. Hollis and told him he did not think he would be able to perform on the contract.

"On March 22, 1991, Mr. Hollis called Respondent to appeal to his sense of fairness to honor the contract that he had signed. During that conver-

sation, Mr. Hollis complained to Respondent that the latter had already signed a new contract on another piece of property, at which time Respondent denied that there was a contract in existence that was executed. That statement was not accurate.

"Prior to the time Mr. Hollis knew that there was a final contract on the Bourne condominium, and Respondent indicated that he was going to change his mind about honoring his contract, Mr. Hollis had kept his condominium off of the sale market since he had a contract with Respondent.

"On March 28, 1991, Joe Hollis as plaintiff filed a lawsuit against Respondent in the District Court of Finney County, Kansas, which was personally served upon Respondent March 28, 1991.

"Respondent closed the sale of his own house, 1609 Longhorn, on March 29, 1991. He did not notify any of the realtors involved in that sale or any of the lendors or the buyers, Mr. and Mrs. Jerry Brown, that he had been sued the day prior so that they might make some determinations whether to proceed and how to proceed in light of the pending lawsuit, which was prior in time to the closing of the sale transaction. In addition, Respondent did not notify Western State Bank of the pendency of a lawsuit, which included a claim for damages against him prior to the closing of his loan on the Bourne condominium. Had he informed them of that situation, the circumstances or requirements of the loan would have changed.

"During Respondent's conversations with Maggie Dale, the realtor who was the buyer's agent in the Bourne transaction, he informed said realtor that he still had a contract with Mr. Hollis but that everything with Mr. Hollis was okay and there would be no problem. Ms. Dale believed there would be no problem because she trusted Respondent, he was a judge.

"Respondent also informed Maggie Dale that the fact that there was a lawsuit pending involving him would be no problem and it would be taken care of. Respondent said to her, 'who knows, I could be buying two places.' Subsequently, Ms. Dale found out that there was a cloud on Mr. and Mrs. Brown's title in the purchase of Respondent's former home at 1609 Longhorn.

"After Mr. Hollis filed his lawsuit on March 28, 1991, against Respondent, represented by his attorney, Ken Havener, Respondent's deposition was taken August 30, 1991. In the deposition, Respondent stated under oath that when he talked to Mr. Hollis on the date Mr. Hollis identifies as March 22, 1991, he had not signed a contract to purchase another property. That testimony was not true.

"Some time after the deposition was taken, Mr. Hollis received in the mail, in an envelope bearing the name 'Paul D. Handy' for a return address, copies of three pages from the statute book relating to assessment of costs for lawsuits out of the Code of Civil Procedure of the Kansas Statutes Annotated. Mr. Havener had not given Respondent permission as the attorney for Mr. Hollis to contact Mr. Hollis directly. Mr. Hollis took the material he received as a threat from the Judge, but he continued to pursue his claim against Respondent."

## B. Commission's Findings of Fact

The findings of fact of the Commission on Count IV, agreed to by respondent and adopted by this court, are as follows:

### "COUNT IV
#### (Hollis Litigation)

"27. Respondent knows Joseph Hollis, a chiropractor in Garden City.

"28. He has known Dr. Hollis for a number of years; they were social acquaintances, not close friends.

"29. Respondent knew Dr. Hollis owned a condominium at 1022 Kensington in Garden City that was located on a development at the Southwind Country Club. The development had a clubhouse, a swimming pool, golf facilities, and a number of other condominiums and other homes in the area. It was one of the more desirable subdivisions of real estate in Garden City.

"30. The condominiums and single family residences at this development were $100,000, plus, properties.

"31. It was desirable to have a house or condominium backing up to the golf course and Respondent had discussions with Dr. Hollis about the possible purchase of the property that he (Dr. Hollis) owned at Southwind.

"32. On November 26, 1990, Respondent entered into a contract for the purchase of certain real property located at 1022 Kensington Boulevard, Garden City, Kansas, with Dr. Joseph N. Hollis.

"33. On January 2, 1991, Connie Barnum, a loan officer for Western State Bank, the lender for a purchase money mortgage on 1022 Kensington, wrote Respondent a letter 'to advise you that your request for a mortgage loan to purchase 1022 Kensington has been approved. This is subject to the sell (sic) of your present home.'

"34. Closing on the sale of the condominium from Dr. Hollis to Respondent was originally set for January 31, 1991. However, 'Paul Handy had a property [Longhorn] on the market for sale, the closing date [for the Kensington condominium] was contingent upon the sale of his property and if he was unable to close January 31 as agreed upon he also had a clause put in the contract that he would want me to keep the property off the market for three months and he would pay the condominium fees and my mortgage note for those 90 days, which moved the closing date up to about the end of March.'

"35. Respondent's property (the Longhorn residence) didn't sell by January 31, 1991, and 'the contract was just left open as agreed for the 90 day extension in the contract.'

"36. On February 20, 1991, a 'Residential Contract for Sale of Real Estate' was executed by Paul D. Handy and Noreene Handy, as Sellers, and Jerry Wayne Brown and Susan Claire Brown, as Buyers, for the property located at 1609 Longhorn Drive, Garden City, Kansas. This was Respondent's then existing residence.

"37. Dr. Hollis testified he had a conversation with Respondent at breakfast in the Hilton on Saturday, March 16, 1991, at which time Respondent advised Dr. Hollis he might be able to close sooner on the condominium at 1022 Kensington Place.

"38. Dr. Hollis also testified that he next had a conversation with Respondent on March 19, 1991, at approximately 4:00 p.m. and Respondent 'advised me that he was not going to honor the contract or to close on the contract.'

"39. Dr. Hollis further testified that at that time Respondent had a contract on other real property and Dr. Hollis did not know that.

"40. Respondent testified that Hollis agreed to rescission of their contract and that their conversation occurred prior to March 18, 1991, when the Respondent signed a contract on the Bourne Estate property. There was no evidence of any written rescission.

"41. Dr. Hollis testified that he learned of Respondent's contract on the Bourne property on March 20.

"42. Dr. Hollis checked with the Coldwell Banker real estate office in Garden City and was told there was a contract on the LaVerne Bourne Estate condominium signed by both parties (Respondent and the Executor).

"43. On March 22, 1991, Dr. Hollis talked by telephone with Respondent. 'I called Paul Handy and appealed [to] his conscience to go ahead and honor his contract with me . . . and I confronted with him that he had contracted on another condominium and he denied it . . . . he said the contract wasn't signed. He said it wasn't a done deal yet.'

"44. On March 28, 1991, a civil action was filed in the District Court of Finney County, Kansas, captioned *Joseph N. Hollis v. Paul D. Handy,* Case No. 91C89. Respondent was personally served with Summons and a copy of the Petition on March 28, 1991, at 4:40 p.m.

"45. On March 29, 1991, the sale closing occurred on Respondent's residence at 1609 Longhorn Drive, Garden City, to Jerry and Susan Brown. Respondent did not attend the closing.

"46. Respondent did not notify the realtors, the lenders, or the buyers of the property at 1609 Longhorn Drive prior to the closing on March 29, 1991, that he had been sued and served with process on March 28, 1991, by Joseph Hollis concerning the property at 1022 Kensington Boulevard.

"47. Maggie Dale testified she was a realtor in Garden City; that she had known Respondent and sold him real estate; and that she was involved with Respondent as a realtor in the Bourne estate transaction as well as the Magnolia property transaction (Count III). Ms. Dale said she was upset upon learning of the Hollis lawsuit but that Respondent told her 'everything would be fine' and 'who knows whether I'm buying two pieces of property or not.'

"48. On April 4, 1991, Respondent closed his purchase on the property at 817 Kensington Boulevard and did not notify the Western State Bank prior to such closing of the pendency of the Hollis suit against him.

"49. All issues and all matters in controversy arising in Case No. 91C89 were settled by compromise, and the case was dismissed pursuant to the Order signed by Judge Larry T. Solomon on May 14, 1992. (The parties agree that this stipulation does not preclude assertion of the claims now pending before the Commission on Judicial Qualifications.)

"50. On May 7, 1992, counsel for Joseph Hollis, Kenneth Havener, sent a letter to Respondent reflecting preparation of the Order of Dismissal, the amount of the settlement, and the fact said amount represented full and final settlement of the case."

## C. Commission's Conclusions of Law

The conclusions of law of the Commission on Count IV are as follows:

### "COUNT IV

"7. The Commission finds that Respondent's conduct violated Canons 1 and 2[A].

"8. Respondent testified that Dr. Hollis orally agreed to a rescission of the contract. Without a written rescission, Respondent should have known that an oral agreement regarding real estate was questionable. In fact, Respondent's remark to Maggie Dale that he might be purchasing two properties indicates that he knew the agreement was questionable.

"9. Respondent argues that the Hollis law suit could not have clouded the title on the sale of Respondent's residence (a homestead); therefore, there was no duty for Respondent to advise the realtors, lenders or his buyer of the law suit prior to the closing on his sale and purchase. To the contrary, the Commission believes that the lender, the purchaser of his property and the realtor were all entitled to know of the Hollis law suit that had been filed. In both his dealings with Hollis and his dealings with his lender and purchaser, Respondent was less than candid and this conduct constituted violations of the applicable Canons.' "

## D. Exception Taken by Respondent

Respondent takes no exception to the Commission's conclusions of law with reference to Count IV.

## E. Discussion and Resolution of Charged Misconduct

We agree with and adopt the conclusions of law of the Commission. We conclude that respondent's activities did violate Canons 1, 2A, and 5C(1).

Public confidence in the judicial system is eroded by irresponsible and improper conduct by judges. We have concluded that respondent's act constituted violations of the Canons of Judicial Conduct, as set forth above. The acts of respondent are inimical to and incompatible with the high standards of conduct imposed on members of the judiciary. The lack of sensitivity to

the conflict of interest, the appearance of impropriety, and respondent's lack of candor in one of his transactions all go to establish violations of the canons set forth above and tend to erode public confidence in the judiciary.

The majority of the Commission recommended that respondent be disciplined by public censure. While we are not bound by the recommendation of the Commission, we believe that the Commission correctly judged the actions of respondent. The conduct of respondent merits discipline no less substantial than that recommended by the Commission.

We therefore conclude that Paul D. Handy should be and he is hereby publicly censured by this court and directed to pay the costs of this proceeding. This order shall be published in the official Kansas Reports and shall constitute the public record in this matter.

IT IS SO ORDERED.